UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PABLO ALEJANDRO ZAMORA MEJIA,

    Petitioner,

  v.    Case No.: 2:25-cv-981-SPC-NPM

KRISTI NOEM, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    Respondents.

## **TEMPORARY RESTRAINING ORDER**

Before the Court are Petitioner Pablo Alejandro Zamora Mejia's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9), Respondents'[1] expedited response (Doc. 12), and Zamora Mejia's reply (Doc. 13). Zamora Mejia is a Venezuelan national who entered the United States lawfully on a B-2 visa on April 5, 2018. Fearing persecution in Venezuela, he filed an application for asylum on April 5, 2019, which remains pending. On March 9, 2021, the Department of Homeland Security ("DHS") designated Venezuela for temporary protected status ("TPS"). *See*

---

[1] Respondents are Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General of the United States; Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement; Garrett Ripa, Immigration and Customs Enforcement, Enforcement Removal Operations ("ICE ERO") Miami Field Office Director; and Kevin Guthrie, Executive Director of the Florida Division of Emergency Management ("FDEM").

1

*Designation of Venezuela for Temporary Protected Status*, 68 FR 13574-01, at *13576 (Mar. 9, 2021).  Zamora Mejia applied for and received TPS status.  Venezuela's 2021 TPS designation was set to expire on September 10, 2025.  However, on September 8, 2025, DHS extended the 2021 designation 60 days and announced its termination, effective at 11:59 p.m., local time, on November 7, 2025.[2]  90 FR 43225-02 (Sept. 8, 2025).

On October 17, 2025, Zamora Mejia was arrested for driving under the influence, and his family posted bond.  Before his release from custody, officials transferred him to the DHS detention facility known as Alligator Alcatraz.  Zamora Mejia's counsel inquired about the legal grounds for his detention.  ICE Officer Juan Moreno[3] responded that Zamora Mejia's TPS lapsed on September 10, 2025.  (Doc. 1-6).  When counsel inquired further about DHS's extension of Venezuela's TPS designation, the inquiry was met by silence.  As a result, Zamora Mejia filed a verified Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 And for Immediate Release Or, In the Alternative, a Prompt Individualized Bond Hearing (Doc. 1), followed by an

---

[2] DHS designated Venezuela for TPS again on October 3, 2023, to allow another round of emigres to apply for protection.  DHS terminated that designation on April 7, 2025.  *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01 (Feb. 5, 2025).  That is irrelevant here.  In the notice, DHS clarified it was "terminating only the October 3, 2023 Venezuela TPS designation." *Id.*  It did not impact the 2021 designation.

[3] Moreno is Acting Supervisory Detention and Deportation Officer, Miami Field Office, Krome SPC with ICE ERO.

2

Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9). He alleges that Respondents are unlawfully restraining/detaining him in violation of constitutional due process under the Fifth Amendment (count I) and violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), by not recognizing the applicability of the September 8, 2025, Federal Register Notice to his case (count II). In the petition and the motion, he asks the Court to order Respondents to immediately release Zamora Mejia from custody.

A district court may issue a temporary restraining order without notice to the adverse party[4] if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974) (ex parte TROs "should be restricted to serving their underlying

---

[4] As of the date of this Order, FDEM has not been served and has not appeared in the case. All other Respondents have been served, appeared, and have responded to the motion. According to the evidence before the Court, Zamira Mejia is detained under ICE's authority. FDEM has no apparent interest in his continued detention. Because all other Respondents are actively participating in this litigation and can provide the relief directed in this Order, the Court issues this Order without notice to FDEM. *See* Fed. R. Civ. P. 65(b)(2).

purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer").

If the movant establishes that he is justified in seeking ex parte relief, he then must show that injunctive relief is appropriate. The movant may do so by showing "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The balance of the harms and public interest elements merge when the government is the party opposing the injunctive relief." *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) (citing *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020)).

**A. Likelihood of success on the merits**

Noncitizens present in the United States are entitled to due process under the Fifth Amendment. *Reno v. Flores*, 507 U.S. 292, 306 (1993). That includes protection against deprivations of liberty—like immigration detention—without due process of law. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.").

4

TPS entitles citizens of the designated countries to live and work in the United States, and it protects them from removal for as long as the TPS designation remains in effect. *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). The Attorney General has the authority to arrest and detain aliens with pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). But there is no legal justification for detaining a noncitizen who is not subject to removal. The law is clear: "An alien provided temporary protected status . . . shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4).

Zamora Mejia's likelihood of success on the merits hinges on whether he currently has temporary protected status. Respondents characterize the issue as uncertain and unsettled. And to be clear, there is ongoing litigation about the future of Venezuela's TPS designation. *See Noem v. Nat'l TPS Alliance*, 606 U.S. ---, --- 2025 WL 2812732, at *1 (Oct. 3, 2025). But that litigation has no bearing on Zamora Mejia's current status. Regardless of the outcome of the pending litigation, Zamora Mejia is protected by TPS until at least November 7, 2025. Respondents' position—that Zamora Mejia's TPS protection ended on September 10, 2025—overlooks the extension DHS announced on September 8, 2025. Because Zamora Mejia has TPS until November 7, 2025, his detention before that time is unlawful, and he is likely to succeed on the merits.

**B. Irreparable harm**

5

To satisfy the second requirement for preliminary injunctive relief, Zamora Mejia must show he will otherwise suffer irreparable injury—that is, an injury that "cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). Zamora Mejia argues that his continued unlawful detention is an irreparable injury. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (same); *but see Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm. Our case law has not gone that far, however.").

Respondents argue Zamora Mejia fails to establish irreparable harm because the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h), allows for monetary relief. Zamora Mejia counters that sovereign immunity and the discretionary-function and intentional-tort exceptions would likely bar such a claim. That is true. *See, e.g., Douglas v. United States*, 796 F. Supp. 2d 1354, 1367–69 (M.D. Fla. 2011) (dismissing a former immigration detainee's FTCA claims of false imprisonment and negligence following a warrantless arrest and detention that continued after probable cause dissipated). It is unlikely Zamora Mejia will ever receive an adequate remedy for his continued unlawful

6

detention. Equitable relief is better suited to address the harm. "Indeed, the Supreme Court long ago stressed the practical nature of the equitable inquiry, stating that it 'is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity.'" *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019) (quoting *Boyce's Ex'rs v. Grundy*, 28 U.S. 210, 215 (1830)). Ordering Respondents to release Zamora Mejia is the most equitable and expedient way to right the wrong of his ongoing unlawful detention.

### C. Balance of equities and public interest

The final two factors for preliminary injunctive relief weigh heavily in Zamora Mejia's favor. His rights to liberty and due process are at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Fifth Amendment's Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Respondents identify no legitimate public interests served by Zamora Mejia's unlawful detention. In fact, the public is better served by the faithful execution of immigration laws. *See Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (recognizing "the public interest in having the immigration laws applied correctly and evenhandedly"); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding the government "cannot suffer harm from an

7

injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns.").

### D. Conclusion

In sum, the Court finds that Zamora Mejia's current immigration detention is unjustified and unlawful, will cause irreparable harm if allowed to continue, and does not serve the public interest. The Court thus grants Zamora Mejia's request for a temporary restraining order. Respondents are unlikely to sustain costs or damages because of this Order, so Zamora Mejia need not post a security bond. *See* Fed. R. Civ. P. 65(c); *see also BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970-71 (11th Cir. 2005).

Accordingly, it is hereby

**ORDERED:**

1. Petitioner Pablo Alejandro Zamora Mejia's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9) is **GRANTED** to the extent the Court enters this temporary restraining order. That portion of the motion requesting a preliminary injunction is **DENIED WITHOUT PREJUDICE**. This case is already on an expedited track, and the Court anticipates it will be fully resolved by the time the temporary restraining order expires. If not, Zamora Mejia may renew the request.

2. Respondents shall facilitate the release of Zamora Mejia from custody within 16 hours of this Order, shall promptly notify his counsel when and where he can be collected, and shall not detain Zamora Mejia while this Order is in effect.  Counsel's contact information is:

Symphorien-Saavedra Law, P.A.
P.O. Box 1627
Orlando, FL 32802
(407) 802-1717
frank@symphorienlaw.com
evelyn@symphorienlaw.com

3. This Order expires at **11:59 p.m., local time, November 7, 2025**.

**DONE AND ORDERED** in Fort Myers, Florida at 4:00 p.m. on November 4, 2025.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record